IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| WHISKEY RIVER ON VINTAGE, INC., d/b/a WHISKEY RIVER ON VINTAGE, WHISKEY ON MAIN, INC., d/b/a WHISKEY RIVER, FOUNDERS ON MAIN, INC., d/b/a FOUNDERS IRISH PUB, Plaintiffs, vs. ILLINOIS CASUALTY COMPANY, Defendant. | No. 4:20-cv-185-JAJ **ORDER** |

This matter comes before the Court pursuant to Defendant's Motion for Judgment on the Pleadings filed on September 25, 2020. [Dkt. No. 26] Defendant moves for judgment on the pleadings of all three counts of Plaintiffs' Amended Complaint and relief on its counterclaim. [Dkt. No. 28] Plaintiffs filed a resistance on October 9, 2020. [Dkt. No. 31] Defendant filed its reply to Plaintiffs' resistance on October 22, 2020. [Dkt. No. 37] For the reasons stated below, Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

## I.    Introduction

### A.  Background

On a motion for judgment on the pleadings, the Court must take the non-movant's *well-pleaded* factual allegations as true. *Country Preferred Ins. Co. v. Lee*, 918 F.3d 587, 588 (8th Cir. 2019); *Guenther v. Griffin Constr. Co.*, 846 F.3d 979, 981 (8th Cir. 2017). Nevertheless, this statement of the background does not simply recite all of the allegations in Plaintiffs' Amended Complaint. Rather, it focuses on allegations pertinent to the Defendant's Motion for Judgment on the Pleadings.

Plaintiffs filed its original complaint in this action in the Polk County District Court. The case was removed to federal court in June 2020. Defendant filed its Answer, Affirmative Defenses, and Counterclaim to Plaintiff's original complaint on June 18, 2020. [Dkt. No. 3] Plaintiff answered Defendant's Counterclaim on July 24, 2020. [Dkt. No. 9] Plaintiff submitted an

Amended and Substituted Complaint and Jury Demand on August 27, 2020. [Dkt. No. 22] Defendant answered Plaintiff's Amended Complaint on September 10, 2020. [Dkt. No. 24]

Plaintiffs are restaurants or bars incorporated and operating in Iowa. Pls.' Am. Compl. [Dkt. No. 22], ¶¶ 2, 16. Plaintiffs' Amended Complaint states they purchased "both Business Income and Civil authority insurance coverage" from Defendant. *Id.* ¶ 17. Plaintiffs' respective insurance policies[1] were effective from October 15, 2019 to October 15, 2020; February 14, 2020 to February 14, 2021; and February 15, 2020 to February 15, 2021. *Id.* ¶ 18. Plaintiffs did not attach the policy to the original Complaint or Amended Complaint, but Defendant attached the policy to its original answer to Plaintiffs' Complaint. [Dkt. Nos. 3-1, 3-2, 3-3]  The policy is identified in the Amended Complaint and is integral to and embraced by Plaintiffs' claims. *See Dean Snyder Constr. Co. v. Travelers Prop. Cas. Co. Am.*, 173 F. Supp. 3d 837, 841 (S.D. Iowa 2016). Reynolds's proclamation is also integral to and embraced by Plaintiffs' claims. As such, the Court may consider the policy and the proclamation without converting Defendant's Motion for Judgment on the Pleadings into a motion for summary judgment. *See id.*; *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 903–04 (8th Cir. 2017) (noting courts may consider items subject to judicial notice, matters of public record, and orders without converting a motion for judgment on the pleadings to a motion for summary judgment).

On March 17, 2020, Iowa Governor Kim Reynolds issued a proclamation related to the COVID-19 pandemic. In relevant part, the proclamation stated:

> All Restaurants and Bars are hereby closed to the general public except that to the extent permitted by applicable law, and in accordance with any recommendations of the Iowa Department of Public Health, food and beverages may be sold if such food or beverages are promptly taken from the premises, such as on a carry-out or drive-through basis, or if the food or beverage is delivered to customers off the premises.

Def.'s Ans. to Pls.' Am. Compl. & Jury Demand [Dkt. No. 24], ¶ 44.

Plaintiffs claim they are entitled to coverage under the insurance policy. Pls.' Am. Compl. [Dkt. No. 22], ¶ 72. Specifically, they allege they are entitled to coverage under the Business

---

[1] Because the relevant language in each of the policies is identical, the Court will only cite to one of the policies and will refer to the collective policies as a single policy throughout this order. The Court will cite to the specific policy that was issued to Whiskey River on Main Inc. d/b/a Whiskey River, attached as Exhibit 1A to Defendant's Answer, Affirmative Defenses, and Counterclaim to Plaintiffs' original Complaint. Def.'s Ans., Ex. 1A [Dkt. No. 3-1]. All citations to the insurance policy will be to this specific exhibit, and the page numbers will correspond with the page numbers stamped to the exhibit upon filing.

Income, Extra Expense, and Civil Authority provisions of their policy. *Id.* ¶ 72. Plaintiffs also contend Defendant should be estopped from invoking the Virus Exclusion provision of the policy. *Id.* ¶ 87.

The Business Income provision of the policy states:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described "premises." The loss or damage must be caused by or result from a Covered Cause Of Loss.

Def.'s Ans., Affirm. Defs., & Countercl. [hereinafter Def.'s Ans.], Ex. 1A [Dkt. No. 3-1 at 21].

The Extended Business Income provision states:

> (a) If the necessary suspension of your "operations" produces a Business Income loss payable under this Coverage Form, we will pay for the actual loss of Business Income . . . .
>
> . . .
>
> (b) Loss of Business Income must be caused by direct physical loss or damage at the described "premises" caused by or resulting from any Covered Cause Of Loss.

*Id.* at 22.

The Extra Expense provision states:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described "premises." The loss or damage must be caused by or result from a Covered Cause Of Loss.

*Id.*

The Civil Authority provision states:

> When a Covered Cause Of Loss causes damage to property other than property at the described "premises", we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described "premises", provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described "premises" are within that area but are not outside a one mile radius from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken

> to enable a civil authority to have unimpeded access to the damaged
> property. . . .

*Id.* at 23.

The Virus Exclusion provision states:

> a.  We will not pay for loss or damage caused directly or indirectly by any
>     of the following. Such loss or damage is excluded regardless of any
>     other cause or event that contributes concurrently or in any sequence to
>     the loss. These exclusions apply whether or not the loss event results in
>     widespread damage or affects a substantial area.
>     . . .
>     (9) Loss Due To Virus or Bacteria
>        We will not pay for loss or damage caused by or resulting from
>        any virus, bacterium or other micro-organism that induces or is
>        capable of inducing physical distress, illness or disease.

*Id.* at 45, 47.

The Consequential Losses Exclusion contained in the policy states, "We will not pay for loss or damage caused by or resulting from any of the following (1) Consequential Losses: Delay, loss of use or loss of market. *Id.* at 48. The Acts or Decisions Exclusion contained in the policy states:

> We will not pay for loss or damage caused by or resulting from any
> of the following Paragraphs (1) through (3). But if an excluded cause
> of loss that is listed in Paragraphs (1) through (3) results in a
> Covered Cause Of Loss, we will pay for the loss or damage caused
> by that Covered Cause Of Loss.
>
> . . .
>
> (2) Acts Or Decisions Acts or decisions, including the failure to act
> or decide, of any person, group, organization or governmental body.

*Id.* at 50.

### B.  Plaintiffs' Claims and Defendant's Counterclaim and Affirmative Defenses

### 1.  Plaintiffs' Claims

Plaintiffs' Amended Complaint contains several allegations that are incorporated into the final Counts. In relevant part, Plaintiffs allege:

> 44. On March 17, 2020, Iowa Governor Kim Reynolds issued a
> proclamation closing all bars and restaurants from dine-in or in-person
> service.
>
>       . . .

46. The action of this Civil Authority resulted in the necessary suspension of Plaintiffs' operations as they economically could not operate their businesses solely on a take-out or delivery basis.

47. The proclamation caused "direct physical loss of or damage to" Plaintiffs' covered property under the Policy by precluding Plaintiffs from conducting their operations , [sic] precluding customers from patronizing the business, and otherwise frustrating the intended purpose of Plaintiffs' businesses, all thereby causing the necessary suspension of operations during a period of restoration.

48. Governor Reynolds' March 17, 2020 Order prohibited access to Plaintiff's Covered Property, and the area immediately surrounding the Covered Property, in response to dangerous physical conditions resulting in and from a Covered Cause or Loss.

49. Losses caused by COVID-19 and/or the Governor Reynolds' proclamation triggered the Business Income, Extra Expense, Civil Authority, and Contamination provisions of the Policy[.]

Pls.' Am. Compl. [Dkt. No. 17], ¶¶ 44, 46–49.

In Count I of their Amended Complaint, Plaintiffs allege they are entitled to a declaratory judgment against Defendant stating that Plaintiffs are entitled to coverage under the Business Income, Extra Expense, and Civil Authority provisions of their insurance policy with Defendant. *Id.* ¶ 74. Plaintiffs also request Defendant be estopped from relying on the Virus Exclusion in the policy, and that the Court order payment of loss of income, including costs and attorney fees. *Id.* In support of this relief, Plaintiffs state:

71. Plaintiffs re-allege all of the above paragraphs 1 through 70 as if fully set forth herein.

72. Each Plaintiff claims damages that are covered under the business interruption loss of income policy issued to each Plaintiff by the Defendant, including claims under the Business Income, Extra Expense, and Civil Authority provisions.

73. Defendant Illinois Casualty Company has denied coverage under [Plaintiffs' policy].

*Id.* ¶¶ 71–73.

In Count II, Plaintiffs allege a claim of breach of contract by Defendant. In pertinent part, this Count states:

75. That Plaintiffs re-allege paragraphs 1 through 72 as fully set forth herein.

76. Plaintiffs' Policy is a contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

77. The Business Income provisions in the Policies require Defendant to pay for Plaintiffs' actual loss of Business Income sustained due to the necessary suspension of its operations during the period of restoration.

78. Governor Reynolds' Proclamation and/or COVID-19 caused direct physical loss to Plaintiffs' Property resulting in loss of Business Income, thereby triggering the Business Income provision of Plaintiff's Policy.

79. The Policies also provide Civil Authority coverage, which promises to pay the actual loss of Business Income Plaintiff's sustained and the necessary Extra Expense cause by action of civil authority that prohibits access to Plaintiff's premises due to physical loss of or damage to the property caused by or resulting from any Covered Cause of Loss.

80. Governor Reynolds' Proclamation prohibited access to Plaintiffs' premises due to physical loss or damage to property resulting in loss of Business Income and Extra Expense, thereby triggering the Civil Authority provision under Plaintiff's Policy.

81. The Policies also provide that Defendant will pay necessary Extra Expense Plaintiff incurs during the period of restoration that Plaintiff would not have incurred had there been no direct physical loss or damage to the premises.

82. Due to Governor Reynolds' Proclamation, Plaintiffs incurred Extra Expenses at Covered Property.

. . .

84. The losses described herein are covered losses under the policy.

85. Plaintiff has complied with the applicable provisions of the Policy.

86. No valid policy exclusion exists to preclude coverage

. . .

88. By denying coverage for the claims and losses set forth herein, Defendant has breached its coverage obligations under the Policies.

*Id.* ¶¶ 75–82, 84–86, 88.

In Count III, Plaintiffs allege Defendant acted with bad faith by failing to investigate their claims. Specifically, Plaintiffs assert:

90. Defendant has a contractual obligation to fully and completely investigate a claim of an insured for policies which they have written and for which they have received commissions.

. . .

92. Defendant denied coverage for each Plaintiff's claim based on a virus exclusion contained in the policy.

93. Defendant failed to make any investigation of each claim and did not inquire if any facility that was insured had any evidence of infestation of the coronavirus or any other virus at any time, or if any employee or customer had become infected with the coronavirus or other virus at any time.

94. That there was a complete failure in any manner in good faith to investigate each Plaintiff's claim and the claims were summarily denied.

95. That the Defendant has acted in bad faith in denying each Plaintiff's claim, and failing in good faith to investigate Plaintiffs' claim pursuant to Iowa Administrative Code section 191-15.41 (507A) and Iowa Code section 507A(4)(b).

96. That as a direct and proximate result of Defendant's bad faith in failing to investigate Plaintiffs' claim, each Plaintiff has been damaged . . . .

*Id.* ¶¶ 90, 92–96.

Plaintiffs admit they have no knowledge of any of the insured properties being infected with COVID-19 nor are they aware of any customers or employees who contracted the virus. *Id.* ¶ 60. Plaintiffs seek a jury trial on all claims. Plaintiffs seek a declaratory judgment stating they are entitled to coverage under their insurance policy, an award for the loss of income of each of the Plaintiffs plus pre-judgment interest, a monetary award for the loss of revenue to The District Venue, attorney fees and costs, punitive damages, and any other relief the Court deems proper. *Id.* ¶¶ 74, 88, 97.

## 2.  Defendant's Counterclaim and Affirmative Defenses

In Defendant's Answer, Affirmative Defenses, and Counterclaim, Defendant asserts a counterclaim against Plaintiffs and provides several affirmative defenses to Plaintiffs' claims. In Count I, Defendant requests a declaratory judgment against Plaintiffs. In support of their request, Defendant states:

3. Illinois Casualty Company issued to Counterclaim Defendant Whiskey River on Main, Inc., insurance policy number BP42546,

effective October 15, 2019 to October 15, 2020. A true and correct copy is attached here as Exhibit 1A.

4. Illinois Casualty Company issued to Counterclaim Defendant Whiskey River on Vintage, Inc., insurance policy number BP44174, effective February 14, 2020 to February 14, 2021. A true and correct copy is attached here as Exhibit 1B.

5. Illinois Casualty Company issued to Counterclaim Defendant Founder on Main, Inc., an insurance policy number BP37140, effective February 15, 2020 to February 15, 2021. A true and correct copy is attached here as Exhibit 1C.

. . .

6. Counterclaim Defendants made claims for coverage on March 17, 2020.

7. Counterclaim Defendants claimed they were entitled to Business Interruption coverage caused by Governor Kim Reynolds's Proclamation and Order.

8. Counterclaim Defendants provided no evidence or attestation to Illinois Casualty Company that there was physical loss or damage to the premises.

9. Counterclaim Defendants' claims do not satisfy the Insuring Agreements of any of the Policies' coverage parts and otherwise are excluded by the following provisions: Loss due to Virus or Bacteria; Consequential Losses; and Acts or Decisions.

10. On March 25, 2020 and April 17, 2020, Illinois Casualty Company denied the claims. See Exhibit 2A (denial letter to Whiskey River on Main, Inc.), 2B (denial letter to Whiskey River on Vintage, Inc.), and 2C (denial letter to Founders on Main, Inc.).

Def.'s Ans., Affirm. Defs., & Countercl. [Dkt. No. 3], ¶¶ 3–10. Defendant seeks an order affirming "the denials of coverage based upon the claims Plaintiffs presented." *Id.* ¶ 12.

Defendant also raises several affirmative defenses to Plaintiffs' claims, including 1) failure to state a claim, 2) preclusion from coverage under the insurance policy's provisions, 3) nonwaiver, 4) fairly debatable claim, 5) failure to perform, 6) failure to mitigate damages, 7) and violation of the Due Process Clause should punitive damages be awarded. *Id.* at 16–17. As to the policy provisions, Defendant states:

Applicable policy exclusions and provisions preclude coverage for the damages alleged in this case, specifically, (1) the fundamental insuring language requiring "direct physical loss of or damage to property at the described 'premises;'" (2) Business Income and Extended Business Income Coverage; (3) Extra Expense and Civil Authority Coverage; (4)

8

Food Contamination and Spoilage Coverage; (5) Virus or Bacteria Exclusion; (6) Consequential Losses Exclusion; and (7) Acts or Decisions Exclusion.

*Id.* at 17.

### C.  Motion for Judgment on the Pleadings

In the motion now before the Court, Defendant seeks judgment on the pleadings dismissing all three Counts included in Plaintiffs' Amended Complaint. Defendant also seeks relief on its counterclaim for declaratory relief. Defendant advances two primary arguments for judgment on the pleadings. First, Defendant argues Plaintiffs' insurance policy does not provide coverage for Plaintiffs' insurance claims because Plaintiffs have not alleged direct physical loss or damage to their covered properties. Second, even if the policy did provide coverage, Defendant contends relevant policy exclusions preclude coverage of Plaintiffs' claims. Because Plaintiffs were not entitled to coverage under the policy, Defendant argues their breach of contract claim must fail. Defendant also argues that Plaintiffs' bad faith claim fails as a matter of law because Defendant had a reasonable basis for denying Plaintiffs' coverage claims based on the policy's language.

In reply, Plaintiffs argue loss and damage are two distinct concepts, with loss not requiring physical alteration to property. They contend they have demonstrated a direct physical loss under the business interruption provision of their insurance policy. Plaintiffs allege Governor Reynolds's proclamation itself amounts to a direct physical loss that is covered under the Business Income and Extra Expense provisions. They contend the proclamation directly caused their businesses to close. Plaintiffs argue the loss of use or inability to use a facility for its intended purpose can constitute a physical loss. Plaintiffs also contend they qualify for coverage under the Civil Authority provision because the coverage applies when an insured party loses the use of the insured premises. They argue proclamation prohibited access to their property and that the policy does not require access to be completely prohibited to trigger coverage. Finally, Plaintiffs contend they have plausibly stated a claim for bad faith based on Defendant's failure to conduct a good faith investigation into their claims.

## II.  Legal Analysis

### A.  Applicable Standards

### 1.  Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c). Notably, the rule does not provide a standard by which to decide a motion for judgment on the pleadings. Fortunately, the Eighth Circuit Court of Appeals has explained, "As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *In re Pre-Filled Propane Tank Antitrust Litig*., 893 F.3d 1047, 1056 (8th Cir. 2018) (quoting *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010)).

Thus, the Court must take the non-movant's *well-pleaded* factual allegations as true, grant all *reasonable* inferences in the nonmovant's favor, and may grant the motion *only* when there is no material issue of fact and the moving party is entitled to judgment as a matter of law. *Lee*, 918 F.3d at 588; *Guenther*, 846 F.3d at 981. The Court is not obligated to accept the nonmoving party's conclusions of law as true. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010). The Court may dismiss a claim when a dispositive issue of law demonstrates a claim does not exist on the pleadings. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). Although the Court must generally restrict itself to matters in the pleadings, "courts may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment." *Williams*, 845 F.3d at 903–04.

## 2. Declaratory Judgments

Parties may seek relief from a district court in the form of a declaratory judgment pursuant to the Declaratory Judgment Act. The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). To determine whether a substantial controversy exists, courts consider whether "there is a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Caldwell v. Gurley Refining Co.*, 755 F.2d 645, 649 (8th Cir. 1985) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Declaratory relief is proper: "1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and 2) when it will

terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." *Alsager v. Dist. Ct. of Polk Cty.*, 518 F.2d 1160, 1163 (8th Cir. 1975).

### 3. Construction of Insurance Policies

This case was removed to federal court on the basis of diversity jurisdiction. When sitting in diversity jurisdiction, courts apply federal procedural law and state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, Iowa law applies to the substantive claims and the Federal Rules of Civil Procedure apply to the Motion for Judgment on the Pleadings itself. *See id.* Under Iowa law, the party seeking coverage under an insurance policy has the burden of demonstrating that a claim falls within the policy's terms. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991). The insurer bears the burden of demonstrating that a coverage exclusion applies. *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 41 (Iowa 2012).

The intent of the parties is controlling in the construction of insurance policies. *Farm Bureau Life Ins. Co. v. Holmes Murphy & Assocs., Inc.*, 831 N.W.2d 129, 133 (Iowa 2013) (citing *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 681 (Iowa 2008)). Courts examine the language of the policy itself to ascertain the intent of the parties, except when the language is ambiguous. *Id.* at 133–34 (citing *A.Y. McDonald Indus., Inc. v. Ins. Co. of N.A.*, 475 N.W.2d 607, 618 (Iowa 1991)). Contract terms are ambiguous when the terms are "capable of more than one meaning when viewed objectively by a reasonably intelligent person . . . ." *Phoenix Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815, 822 (S.D. Iowa 2015) (citations omitted). A disagreement about the meaning of terms does not establish ambiguity. *Id.* (quoting *Farm Bureau Life Ins.*, 831 N.W.2d at 133). Additionally, "[a]n undefined policy term does not automatically equate to an ambiguous term . . . ." *Milligan v. Grinnell Mut. Reinsurance Co.*, No. 00-1452, 2001 WL 427642, at *2 (Iowa Ct. App. Apr. 27, 2001). When terms in a policy are undefined, courts interpret the terms to have their ordinary meaning. *Amera–Seiki Corp. v. Cincinnati Ins. Co.*, 721 F.3d 582, 585 (8th Cir. 2013). Undefined terms are interpreted in light of the policy as a whole. *See Fashion Fabrics of Ia., Inc. v. Retail Inv'rs Corp.*, 266 N.W.2d 22, 26 (Iowa 1978).

To succeed on a bad faith claim under Iowa law, the insured must demonstrate: "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis." *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002). The first element is objective, and the second

element is subjective. *Id.* An insurer's objectively reasonable denial of coverage precludes bad-faith liability. *Id.* at 652. A reasonable basis exists for denying coverage when "the insured's claim is fairly debatable either on a matter of fact or law." *Bellville v. Farm Bureau Mt. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). A court may determine whether a denial of coverage was fairly debatable as a matter of law. *Id.*

### B. Discussion: Plaintiffs' Claims

### 1. Declaratory Judgment

#### a. Business Income and Extra Expense Coverage

For there to be coverage under the Business Income provision, there must be "direct physical loss of or damage to property at the described 'premises.'" Def.'s Ans., Affirm. Defs., & Countercl., Ex. 1A [Dkt. No. 3-1 at 21]. Plaintiffs focus on the first portion of this phrase, "direct physical loss of." They contend the use of the disjunctive—or—indicates "loss" and "damage" are two distinct concepts, either of which is sufficient to trigger coverage. Pls.' Am. Compl. [Dkt. No. 22], ¶¶ 27–28. Plaintiffs note the policy does not define this phrase or any of its terms, and as such, the policy terms should be interpreted in light of the policy as a whole. *Id.* ¶ 26. They allege other portions of the policy indicate that "loss" does not have to be a tangible alteration of property. They contend several courts had interpreted "physical loss or damage to property" to include any condition that makes it impossible to use property for its intended use. *Id.* ¶ 30.

Plaintiffs allege they are entitled to coverage under the Business Income provision because Reynolds's proclamation caused them direct physical loss of or harm to their covered properties by "precluding Plaintiffs from conducting their operations , [sic] precluding customers from patronizing the business, and otherwise frustrating the intended purpose of Plaintiffs' businesses, all thereby causing the necessary suspension of operations during a period of restoration." *Id.* ¶ 47.

Defendant contends Plaintiffs have failed to allege direct physical loss or damage, and therefore they do not fall within the policy's coverage. Def.'s Mem. Auths. Supp. Mot. J. Pleadings [Dkt. No. 28 at 7]. Defendant argues the phrase "direct physical loss of or damage to property" requires tangible loss or damage to trigger coverage, which Plaintiffs have not pleaded. *Id.* at 9, 15. Further, Defendant contends Plaintiffs' loss of use of the insured properties for its intended purpose does not constitute tangible loss or damage because Plaintiffs' argument rests on a misinterpretation of Reynolds's proclamation. *Id.* at 16–17.

Plaintiffs respond by arguing ambiguities about the term "loss" preclude Defendant's Motion for Judgment on the Pleadings. Pls.' Resis. Def.'s Mot. Dismiss & Req. Oral Arg. [Dkt. No. 31 at 12–15]. Plaintiffs contend "loss" is not defined anywhere in the policy as requiring actual alteration of property. *Id.* at 12. They also affirm their stance on the importance of the use of the disjunctive in the phrase "direct physical loss of or damage." *Id.* at 13–14. Plaintiffs allege the proclamation itself constitutes direct physical loss and that they could not have exercised any judgment in deciding to keep their operations open. *Id.* at 15. They contend, the proclamation "directly deprived [them] of the ability to operate their businesses, thereby necessitating the suspension of their operations." *Id.* at 16.

At the first step of the analysis, the Court seeks to ascertain the intent of the parties by looking at the language of the policy. *See Farm Bureau Life Ins.*, 831 N.W.2d at 133. The Court finds the language of the Business Income provision to be unambiguous. Reading the policy language as a whole, the policy is unambiguous in its requirement that an insured suffer "direct physical loss of or damage" to the insured property to qualify for the Business Income provision. Because the phrase and its terms are undefined, the undefined terms are given their ordinary meaning. *Amera–Seiki Corp.*, 721 F.3d at 585.

Iowa courts have interpreted similar language in insurance policies in the past. In 2001, the Iowa Court of Appeals considered the meaning of the phrase "direct physical loss or damage" in an insurance policy. *Milligan*, 2001 WL at *2. Because the phrase and its terms were not defined in the policy, the Iowa Court of Appeals turned to the ordinary meaning of the terms "loss" and "damage." *Id.* The court determined the terms unambiguously referred to the destruction or injury of the insured property, meaning the alleged loss or destruction must be physical. *Id.* The Iowa Court of Appeals concluded the phrase was not open to any other interpretation. *Id.*

In 2015, this Court interpreted the phrase, "direct physical loss of or damage," in an insurance policy according to Iowa law. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 821–27. In *Phoenix Insurance Company v. Infogroup, Inc.*, the Court considered whether an insured party was entitled to coverage under an insurance policy's Extra Expense provision after the insured temporarily relocated its business due to the threat of flooding. *Id.* at 818, 821. The Extra Expense provision required "direct physical loss of or damage to property" to trigger coverage. *Id.* at 819. Like the case currently before the Court, the phrase and its terms were not defined in the insurance policy. *Id.* at 823. This Court determined "physical loss or damage generally requires some sort of

physical invasion" and rejected Infogroup's argument that the loss of use of their property as a result of the threat of flooding amounted to direct physical loss or damage. *Id.* at 823–24. In so doing, this Court acknowledged its interpretation "comports with other courts interpreting what constitutes 'physical loss' under similar insurance provisions." *Id.* at 823 (citing *Milligan*, 2001 WL at *2).

In reaching this conclusion, this Court noted that interpreting the policy to only require loss of use "would not give effect to the plain language of the policy." *Id.* at 825 (citing *Farm Bureau Life Ins.*, 831 N.W.2d at 133). The Court stated:

> While a loss of use may, in some cases, entail a physical loss, the Court does not find "loss of use" and "physical loss or damage" synonymous. Indeed, interpretation of physical loss as requiring only loss of use stretches "physical" beyond its ordinary meaning and may, in some cases "render the word 'physical' meaningless." *Source Food Tech., Inc. v. U.S. Fidelity and Guar. Co.*, 465 F.3d 834, 835 (8th Cir.2006) (finding no coverage under a policy covering "direct physical loss to property" when property was meat which was not allowed to cross the border into the United States and was thus treated as unusable but in fact suffered no spoilage or contamination); *Pentair, Inc. v. Am. Guarantee and Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir.2005) (affirming district court's finding of no coverage under the policy because "[o]nce physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss ... But [Plaintiff's] argument, if adopted, would mean that direct physical loss or damage is established whenever property cannot be used for its intended purpose.").

*Id.* As such, the Court concluded "physical loss or damage" requires a material loss, which calls for something more than a threat of loss. *Id.*

In 2016, another court in this district considered the meaning of the phrase "direct physical loss" in a dispute regarding when direct physical loss occurred to the insured property. In *Dean Snyder Construction Company v. Travelers Property Casualty Company of America*, the parties disputed whether direct physical loss occurred when a windstorm damaged the insured property or when liability attached to the insured following an arbitration award with a third party for rebuilding costs. 173 F. Supp. 3d at 842–43. The court considered the common usage of the terms "loss" and "physical" to determine when the direct physical loss occurred. *Id.* at 843. Based on the common understanding of the terms at issue, the court concluded an arbitration award does not constitute physical loss. *Id.* at 844.

Plaintiffs, among other reasons, attempt to distinguish their case from *Phoenix* because the decision did not specifically address the significance of the use of the disjunctive in the phrase "direct physical loss of or damage." This argument goes to Plaintiffs' contention that the use of "or" in the policy means that coverage applies when there is either "physical loss of property **or** damage to property occurs." Pls.' Am. Compl. [Dkt. No. 22], ¶ 27. Despite Plaintiffs' attempt to differentiate *Phoenix*, the Court finds no reason to diverge from its previous interpretation of the phrase "direct physical loss of or damage." As such, the Court concludes the phrase "direct physical loss of or damage to property" requires a physical invasion and loss of use is insufficient to trigger coverage without physical damage to the insured properties. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 824–26.

Even if the Court assumes loss and damage are distinct concepts that can independently trigger coverage, the terms are unambiguous, and Plaintiffs have failed to allege facts sufficient to qualify for Business Income coverage. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 826. Plaintiffs allege that the proclamation caused them direct physical loss or damage by precluding customers from patronizing their business, precluding them from conducting business, and frustrating the intended purpose of their businesses. Pls.' Am. Compl. [Dkt. No. 22], ¶ 47. Although Plaintiffs attempt to paint their losses as physical, they have essentially pleaded loss of use, which is insufficient to establish a direct physical loss. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 825–26. Even if loss and damage are distinction, the physicality requirement of the loss or damage remains, and Plaintiffs have failed to allege a tangible loss or alteration to property that is sufficient to trigger coverage under the Business Income provision. *See id.* at 826.

The Extra Expense provision requires "direct physical loss or damage" to the insured property to trigger coverage. For the same reasons identified above, Plaintiffs have failed to plausibly allege direct physical loss or damage to the insured property within the meaning of the Extra Expense provision. Because Plaintiffs have failed to allege direct physical loss or damage to the insured property as required by the policy, they are not entitled to coverage under the Business Income or Extra Expense provisions.

Courts across the country have considered the availability of insurance coverage for business closures mandated as a result of the COVID-19 pandemic. Many of these courts considered policy language and circumstances similar to those before this Court, with many courts reaching the same conclusion as this Court regarding the meaning of physical loss or damage. In

this district, a court recently concluded an insured party failed to allege any physical loss or damage within an insurance policy's coverage when the insured claimed its loss was a result of COVID-19 and the governor's proclamation suspending non-emergency dental procedures. *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4:20-cv-CRW-SBJ, 2020 WL 5820552, at *1 (S.D. Iowa Sept. 29, 2020). In *Diesel Barbershop, LLC v. State Farm Lloyds*, a Texas court concluded an insured party's allegation that it lost the use of the insured property because of government-closure orders in response to COVID-19 was insufficient to constitute direct physical loss under the insurance policy. No. 5:20-cv-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020). In *Malaube, LLC. v. Greenwich Insurance Company*, a Florida court held an insured party's allegation that the government emergency orders forced its restaurant to close was insufficient to constitute direct physical loss or damage under the insurance policy. Case No. 20-22615-Civ-Williams/Torres, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020). In *Sandy Point Dental, PC. v. Cincinnati Insurance Company*, an Illinois court concluded the phrase "direct physical loss" unambiguously requires some form of physical damage to the insured premises, and COVID-19 related government closure orders did not amount to direct physical loss to the insured premises. Case No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21. 2020).

Similarly, in *Pappy's Barber Shops, Inc. et al. v. Farmers Group Inc.*, a California court rejected the plaintiffs' contention that the phrase "direct physical loss of or damage to property" does not require tangible damage or alteration to the insured property. Case No. 20-CV-907-CAB-BLM, 2020 WL 550221, at *4 (S.D. Cal. Sept. 11, 2020). The court also rejected the plaintiffs' argument that the government-closure orders themselves caused direct physical loss or damage to the insured property. *See id.* at *4–6. Likewise, the court was not persuaded by the plaintiffs' contention that the use of the disjunctive in the phrase "direct physical loss" did not require tangible damage. *See id.* at 5–6. In *10E, LLC v. Travelers Indemnity Company of Connecticut*, the plaintiff alleged it was entitled to coverage under the Business Income and Extra expense provisions of its insurance policy because the government orders restricting dine-in services at its restaurants prohibited access to its restaurant and prevented the intended use of the property. 2:20-cv-04418-SVW-AS, 2020 WL 5359653, at *1–2 (C.D. Cal. Sept. 2, 2020). The California court concluded the plaintiff was not entitled to coverage under these provisions because the plaintiff failed to allege a direct physical loss or damage. *Id.* at *5. In the case currently before the Court, Plaintiffs cite some cases that are contrary to this interpretation; however, these cases are distinguishable

based on their facts. Further, the cases cited by the Plaintiffs are not analyzed on the same level as the cases referenced above.

The Court concludes that it is a settled matter in Iowa law that direct physical loss or damage requires tangible alteration of property and that loss of use alone is insufficient. *See Milligan*, 2001 WL at \*2. The Court further concludes that Plaintiffs have not alleged a direct physical loss or damage that is sufficient under the policy or Iowa law. *See id.*; *Phoenix Ins. Co.*, 147 F. Supp. 3d at 825. Because a direct physical loss or damage to the insured property is a prerequisite to trigger coverage under the Business Income and Extra Expense provisions of the policy, Plaintiffs have failed to plausibly plead an entitlement to coverage under these provisions. No material issue of fact remains unresolved, and Defendant is entitled to judgment as a matter of law.

### b.  Civil Authority Coverage

To trigger coverage under the Civil Authority provision, a Covered Cause of Loss must cause damage to a property other than the insured property. Additionally, there must be an "action of civil authority that prohibits access to the described 'premises'" in "response to dangerous physical conditions" created by "damage to property other than property at the described 'premises'" that causes "[a]ccess to the area immediately surrounding the damaged property [to be] prohibited by civil authority as a result of the damage" and the insured property is within a one-mile radius of the damaged property. Def.'s Ans., Ex. 1A [Dkt. No. 3-1 at 23].

Plaintiffs allege Reynolds's proclamation was an action of a Civil Authority that "resulted in the necessary suspension of Plaintiffs' operations." Pls.' Am. Compl. [Dkt. No. 22], ¶ 46. They allege the proclamation itself caused direct physical loss of or damage to the insured properties because it "prohibited access to Plaintiff's Covered Property, and the area immediately surrounding the Covered Property, in response to dangerous physical conditions resulting in and from a Covered Cause of Loss." *Id.* ¶ 48.

Defendant contends Plaintiffs do not meet the coverage requirements of the Civil Authority provision. Defendant argues Plaintiffs have failed to plead physical loss, either at the insured premises or another location. Def.'s Mem. Auths. [Dkt. No. 28 at 8 n.2]. Further, Defendant alleges Plaintiffs were not denied access to their properties. *Id.* Defendant also contends the proclamation was not issued as a result of specific physical damage, rather it was issued to limit the spread of

COVID-19. *Id.* Finally, Defendant argues Plaintiffs have not alleged their properties were within a one-mile radius of the damaged property. *Id.*

Plaintiffs respond by arguing that Reynolds's proclamation is an action of a Civil Authority that prohibited access to their property. Pls.' Resis. Def.'s Mot. Dismiss [Dkt. No. 31 at 22]. They contend that the Civil Authority provision does not explicitly state that access to the insured property must be completely prohibited for coverage to apply. *Id.* Plaintiffs argue "the actions of Civil Authorities closing non-essential businesses such as Plaintiffs' bars and restaurants evidences an awareness on the part of Federal, state, and local governments that covid-19 causes 'loss of or damage to property' with respect to both the Business Income and Civil Authority claims." *Id.* Plaintiffs contend the threat of COVID-19 and its ability to attach to and harm property resulted in the proclamation which caused direct physical losses to Plaintiffs' properties.  *Id.* at 21.

Here, the Civil Authority provision unambiguously requires that an order of civil authority be issued in response to a dangerous physical condition created by damage to another property and that the insured property be within a one-mile radius of the damaged property. Def.'s Ans., Ex. 1A [Dkt. No. 3-1 at 21]. Plaintiffs have failed to plead facts sufficient to qualify for coverage under the Civil Authority provision. They point generally to the physical form COVID-19 may take; however, Plaintiffs have not alleged damage to another property. Further, Reynolds's proclamation was not issued in response to a dangerous physical condition that resulted from a Covered Cause of Loss. Rather, the proclamation was issued to limit the spread of COVID-19. Because Plaintiffs have failed to allege facts sufficient to trigger the Civil Authority provision, the Court need not address whether a civil authority order must completely prohibit access. However, the Court is skeptical that the prohibits access prong would be satisfied when the Plaintiffs were able to conduct delivery and take-out services from their properties but chose not to do so. *See Phoenix Ins. Co.*, 147 F. Supp. 3d at 824 (concluding the court could not find a loss of use of the insured property when the insured party still stored data and had employees at the property at the time of the alleged loss of use). Regardless, Plaintiffs have failed to allege facts sufficient to state a claim for coverage under the Civil Authority provision.

Courts across the country have reached the same conclusion in similar circumstances and with comparable insurance policy language. In *Sandy Point Dental, PC*, an Illinois court held an insured party was not entitled to civil authority coverage where the insured failed to allege COVID-19 caused direct physical loss to another property. 2020 WL at *3. The court also noted civil

authority coverage was not triggered because the government order only limited non-essential dental procedures. *Id.* As such, the court determined the insured failed to establish that there was an order of civil authority that limited its access to the insured property. *Id.* In *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, a California court found an insured party was not entitled to coverage under the civil authority provision because the insured failed to establish a connection between other damaged property and the denial of access to its business. Case No. 20-cv-03213-JST, 2020 WL 5525171, at *6–7 (N.D. Cal. Sept. 14, 2020). In *10E, LLC*, a California court concluded the civil authority provision of an insurance policy was not triggered when the insured party failed to allege direct physical loss or damage to another property. 2020 WL at *5.

The Court concludes the that Plaintiffs have not alleged facts plausibly demonstrating an entitlement to coverage under the policy's Civil Authority provision. No material issue of fact remains unresolved, and Defendant is entitled to judgment as a matter of law.

### c.   Virus Exclusion

Plaintiffs' Amended Complaint alleges Defendant should be estopped from invoking the Virus Exclusion to preclude coverage. Pls.' Am. Compl. [Dkt. No. 22], ¶ 74. Plaintiffs contend the original adoption of the virus exclusion by the Iowa Insurance Commissioner was secured by misrepresentations and that Defendant directly or indirectly participated in this effort. *Id.* ¶¶ 66–69. Plaintiffs allege this is sufficient to estop Defendant from invoking the Virus Exclusion. *Id.* ¶ 74.

Defendant argues that even if Plaintiffs can establish that they are entitled to coverage under the Business Income, Extra Expense, or Civil Authority provision, Plaintiffs are not entitled to coverage because several policy exclusions preclude coverage. Def.'s Mem. Auths. [Dkt. No. 28 at 17]. Defendant contends the Virus Exclusion precludes coverage because the Plaintiffs' losses resulted from a virus and the Virus Exclusion unambiguously applies. *Id.* at 20. Defendant alleges the exclusion applies regardless of whether Plaintiffs allege the proclamation or COVID-19 caused their losses. *Id.*

In reply, Plaintiffs contend the proclamation itself amounts to a direct physical loss to their covered properties and the surrounding area. Pls.' Resis. Def.'s Mot. Dismiss [Dkt. No. 31 at 23]. They also argue they would have continued operating their businesses despite the COVID-19 pandemic. *Id.* Plaintiffs affirm their stance that Defendant should be estopped from enforcing the

Virus Exclusion based on estoppel, unclean hands, breach of good faith and fair dealing, and general public policy. *Id.* at 24.

The Virus Exclusion unambiguously states it will not pay for loss or damage that is directly or indirectly caused by any virus, regardless of any other cause or event that contributes to the loss. Def.'s Ans., Ex. 1A [Dkt. No. 3-1 at 45, 47]. Plaintiffs' alleged losses were caused by or resulted from a virus, specifically, COVID-19. Plaintiffs' Amended Complaint states their losses were "caused by COVID-19 and/or the Governor Reynolds's proclamation . . . ." Pls.' Am. Compl. [Dkt. No. 22], ¶¶ 49, 78. Plaintiffs thereby recognize their alleged losses were caused by COVID-19, which triggers the Virus Exclusion. Plaintiffs also recognize their losses resulted from COVID-19 in their resistance to Defendant's Motion for Judgment on the Pleadings. In their resistance, Plaintiffs state, "The threat and ubiquitous presence of COVID-19 . . . resulted in Governor Reynolds' proclamation, which in turn caused 'direct physical loss' to Plaintiffs' covered property." Pls.' Resis. Def.'s Mot. Dismiss [Dkt. No. 31 at 21].

Plaintiffs' contention that it was the proclamation that caused their losses rather than the virus because they would have remained open does not save their claims from the Virus Exclusion. Plaintiffs' losses were directly or indirectly caused by or resulted from COVID-19, rather than strictly the proclamation. The proclamation was issued in response to the COVID-19 pandemic as referenced in the proclamation itself. Office of the Governor of Iowa Kim Reynolds, *Gov. Reynolds Issues a State of Public Health Disaster Emergency*, iowa.gov, https://governor.iowa.gov/press-release/gov-reynolds-issues-a-state-of-public-health-disaster-emergency (Mar. 17, 2020). The Virus Exclusion is therefore triggered, and coverage is excluded even if Plaintiffs could establish coverage under the Business Income, Extra Expense, or Civil Authority provisions of the insurance policy.

Courts across the country have reached the same conclusion when reviewing similar claims under similar circumstances and insuring language. *See, e.g.*, *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, Case No. 20-cv-04434 JSC, 2020 WL 5642483, at *2–4 (N.D. Cal. Sept. 22, 2020) (concluding the virus exclusion provision with similar language applied under similar circumstances); *10E, LLC*, 2020 WL at *6 (expressing skepticism that the plaintiff could avoid application of the policy's virus exclusion by suggesting in-person dining restrictions put in place to limit the spread of COVID-19 were not caused by a virus); *Diesel Barbershop, LLC*, 2020 WL at *6–7 (concluding an insurance policy's virus exclusion provision applied when the plaintiffs

contended the state shutdown order put in place to limit the spread of COVID-19 caused their losses rather than the virus).

Because the allegations in Plaintiffs' Amended Complaint do not plausibly state a claim for coverage under the Business Income, Extra Expense, or Civil Authority provisions of the policy, Plaintiff is not entitled to the declaratory relief requested.

**2. Breach of Contract**

Plaintiffs allege Defendant breached its coverage obligations to Plaintiffs by denying Plaintiffs' claims. Pls.' Am. Compl. [Dkt. No. 22], ¶ 88. Plaintiffs contend they complied with the terms of the policy and have suffered losses that triggered the Business Income, Extra Expense, and Civil Authority provisions of the policy. *Id.* ¶¶ 78–81, 85. Plaintiffs argue they had reasonable expectations that their alleged losses were covered under the policy provisions referenced above. *Id.* ¶ 83. They allege no policy exclusions apply to preclude coverage, and if the Virus Exclusion were applicable, Plaintiffs argue Defendant should be estopped from invoking it under these circumstances. *Id.* ¶¶ 85–87. Specifically, Plaintiffs contend Defendant should be estopped from enforcing the Virus Exclusion based on regulatory estoppel, unclean hands, breach of good faith and fair dealing, and general public policy. Pls.' Resis. Def.'s Mot. Dismiss [Dkt. No. 31 at 24].

Plaintiffs allege the Virus Exclusion was included in these types of policies under false and pretenses. Pls.' Am. Compl. [Dkt. No. 22], ¶ 66. In support of this contention, Plaintiffs refer to the adoption of this exclusion by the insurance industry over a decade ago. They contend the insurance industry cast the virus exclusion as a clarification for coverage of disease-causing agents. *Id.* ¶ 63. Plaintiffs allege the insurance industry misrepresented to states that the virus exclusion would not alter the scope of coverage when it actually did without lowering premiums. *Id.* ¶ 68. They contend Defendant directly or indirectly "participated in the insurance industry's efforts to effect Insurance Commissioners, including the State of Iowa's Insurance Commissioner, to approve the suggested virus exclusion." *Id.* ¶ 69.

Defendant denies these allegations. Defendant argues Plaintiffs' breach of contract claim fails because Plaintiffs were not entitled to coverage under any policy provisions. Def.'s Mem. Auths. [Dkt. No. 28 at 6–16]. Even if Plaintiffs could qualify for coverage under the Business Income, Extra Expense, or Civil Authority provisions, Defendant contends Plaintiffs' claims would still be precluded under the Virus, Consequential Losses, and Acts or Decisions exclusions. *Id.* at 17–24.

The Court finds Plaintiffs have not plausibly stated a claim for breach of contract because Plaintiffs failed to plausibly state a claim for coverage under the policy for the reasons outlined above. Plaintiffs have also not plausibly stated a claim to estop Defendant from invoking the Virus Exclusion. Plaintiffs have not alleged Defendant specifically misrepresented the purpose of the Virus Exclusion to them. Likewise, Plaintiffs have not plausibly stated a claim to invoke the reasonable expectations doctrine. The reasonable expectations doctrine only applies to prevent the application of an exclusion in an insurance policy when the exclusion  "(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction." *Clark-Peterson Co. v. Indep. Ins. Assocs., Ltd.*, 492 N.W.2d 675, 677 (Iowa 1992) (citations omitted). Before a court even considers these elements, the insured party bears the burden of proving either "circumstances attributable to the insurer which would foster coverage expectations" or that the policy is "such that an ordinary lay person would misunderstand its coverage." *Id.* The reasonable expectations doctrine is not intended to expand coverage on a purely equitable basis. *Id.*

Plaintiffs have failed to plead facts that are sufficient to invoke the reasonable expectations doctrine and to generate an issue of material fact. The language of the virus exclusion is clear; it explicitly states Defendant "will not pay for loss or damage caused by or resulting from any virus . . . ." Def.'s Ans., Ex. 1A [Dkt. No. 3-1 at 47]. Based on the plain language of the exclusion, Plaintiffs could not have reasonably expected their alleged losses to be covered. *See Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 504 (Iowa 2013). The Virus Exclusion provision is not one "where only 'painstaking study of the policy provisions would have" revealed an exclusion or neutralized an otherwise reasonable expectation." *Phoenix Ins. Co.*, 147 F. Supp. 3d at 832 (quoting *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 112 (Iowa 1981) (citations omitted)). Even if Plaintiffs had pleaded sufficient facts to make out a claim for the prerequisite, the reasonable expectations doctrine remains inapplicable because they have failed to allege sufficient facts to demonstrate that the policy language is bizarre or oppressive, that the exclusion eviscerates terms explicitly agreed to, or sufficient facts that demonstrates applying the exclusion would eliminate the dominant purpose for coverage.

Plaintiffs' Amended Complaint does not plausibly state a claim for coverage under the Business Income, Extra Expense, or Civil Authority provisions of the policy. No issue of material fact remains unresolved and Defendant is entitled to judgment as a matter of law. Even if Plaintiffs

could state a claim for coverage under these provisions, Plaintiffs' breach of contract claim still fails because the Virus Exclusion would preclude coverage.

### 3. Bad Faith Claim

Plaintiffs allege Defendant has a contractual obligation to fully investigate insurance claims. Pls.' Am. Compl. [Dkt. No. 22], ¶ 90. They contend Defendant failed to investigate their claims and summarily denied their claims. *Id.* ¶¶ 93–94. Plaintiffs argue Defendant acted in bad faith my denying their claims without an investigation. *Id.* ¶ 95.

Defendant denies these allegations. Defendant contends it did not act in bad faith in denying Plaintiffs' claims because it had a reasonable basis for denying their claims. . Def.'s Mem. Auths. [Dkt. No. 28 at 25]. Defendant argues Plaintiffs' claims did not meet the fundamental insuring language, and their claims were otherwise barred due to other policy exclusions. *Id.* Further, Defendant contends that Plaintiffs have not alleged that Defendant knew or should have known it lacked support to deny Plaintiffs' claims. *Id.* at 26.

In reply, Plaintiffs affirm their stance that Defendant had an obligation to fully investigate their claims and failed to do so. Pls.' Resis. Def.'s Mot. Dismiss [Dkt. No. 31 at 30–31]. They contend Defendant's self-serving denial of Plaintiffs' claims based on ambiguous policy language is not a reasonable basis for denial. *Id.* at 32.

Plaintiffs' bad faith claim fails because Plaintiffs have not pleaded facts that are sufficient to state a claim for bad faith. The Business Income and Extra Expenses provisions require that there be direct physical damage or loss to the insured property, and Iowa courts have consistently interpreted similar language to require tangible harm to property. *See Milligan*, 2001 WL at *2. Plaintiffs have failed to allege any facts that are sufficient to constitute direct physical damage or loss under Iowa law. *See id.* Plaintiffs have not alleged facts sufficient to qualify for coverage under the Civil Authority provision. The Civil Authority provision requires damage to property other than the insured property and that a civil authority order prohibits access to the insured premises as a result of a dangerous condition at the damaged property. Plaintiffs have not alleged damage to another property within a one-mile radius of the insured properties. Further, the policy requires access to be prohibited, and Plaintiffs admitted in their Amended Complaint that the proclamation only closed all dine-in or in-person service at all bars and restaurants but still permitted take out or delivery services. Consequently, Plaintiffs have failed to allege facts that are sufficient to demonstrate Defendant lacked a reasonable basis to deny their claims for coverage

under the Business Income, Extra Expense, and Civil Authority provisions. *See Shelly Funeral Home, Inc.*, 642 N.W.2d at 657.

Regardless, Plaintiffs' bad faith claim fails because Plaintiffs have not alleged facts that are sufficient to prevent the application of the Virus Exclusion. The Virus Exclusion precludes coverage for losses caused directly or indirectly by a virus. As demonstrated by Plaintiffs' pleadings, Plaintiffs' alleged losses were directly or indirectly caused by COVID-19 because Reynolds's proclamation was issued as a result of the COVID-19 pandemic. Consequently, Plaintiffs have failed to allege facts that are sufficient to demonstrate Defendant lacked a reasonable basis to deny their claims for coverage based on the Virus Exclusion. *See Shelly Funeral Home, Inc.*, 642 N.W.2d at 657. Additionally, Plaintiffs have not pleaded facts that are sufficient to demonstrate Defendant knew or should have known that it lacked a reasonable basis to deny Plaintiffs' claims.

Plaintiffs have failed plausibly state a claim for bad faith. No issue of material fact remains unresolved, and Defendant is entitled to judgment on this claim as a matter of law.

### C. Discussion: Defendant's Counterclaim

Defendant's Counterclaim requests a declaratory judgment affirming Defendant's denials of coverage of Plaintiffs' claims under the policy.[2]

### 1. Extended Business Income Coverage

Defendant's Answer to Plaintiff's Complaint raises the inapplicability of the Extended Business Income provision as an affirmative defense and seeks a declaratory judgment affirming its denial of coverage on this policy provision. Defendant contends Plaintiffs have not provided them with evidence demonstrating a physical loss or damage to the insured premises. Def.'s Ans. [Dkt. No. 3], ¶ 8. Defendant also alleges none of Plaintiffs' claims fall within the policy's coverage language. *Id.* ¶ 9. Even if Plaintiffs' claims did qualify for coverage, Defendant argues coverage would be excluded by the Virus Exclusion, Consequential Loss Exclusion, and Acts or Decisions Exclusion. *Id.* Plaintiffs' Answer denies these allegations. Pls.'/Countercl. Defs.' Ans. [Dkt. No. 9 at 2].

---

[2] Defendant only included its counterclaim in its Answer, Affirmative Defenses, and Counterclaim to Plaintiff's original Complaint. [Dkt. No. 3] Defendant did not restate its counterclaim in its Answer to Plaintiffs' Amended Complaint. [Dkt. No. 24] However, the Court may still consider Defendant's counterclaim even though it was not realleged in Defendant's Answer to Plaintiff's Amended Complaint. *See Davis v. White*, 794 F.3d 1008, 1015–16 (8th Cir. 2015).

Defendant argues Plaintiffs fail to meet the coverage language of the Extended Business Income provision. Defendant contends this provision requires "direct physical loss or damage at the premises," which Plaintiffs have failed to allege. Def.'s Mem. Auths. [Dkt. No. 28 at 8]. Plaintiffs do not specifically address the Extended Business Income provision in their response to Defendant' Motion for Judgment on the Pleadings; however, Plaintiffs argue they have alleged a direct physical loss. Pls.' Resis. Def.'s Mot. Dismiss [Dkt. No. 31 at 15].

The Extended Business Income provision unambiguously requires direct physical loss or damage to trigger coverage. Defendant has alleged facts that are sufficient to demonstrate Plaintiffs were ineligible for coverage under the Extended Business Income provision. For the reasons outlined above, Plaintiffs have not plausibly alleged a direct physical loss. Because Defendant has alleged facts that are sufficient to demonstrate Plaintiffs were not entitled to coverage under this provision and Plaintiffs have failed to allege facts to the contrary, Defendant is entitled to the declaratory relief sought as to this provision. Regardless, the Virus Exclusion would preclude coverage for the reasons set forth above.

## 2. Food Contamination Coverage

Defendant's Answer to Plaintiff's Complaint raises the inapplicability of the Food Contamination provision as an affirmative defense and seeks a declaratory judgment affirming its denial of coverage on this policy provision. Defendant contends Plaintiffs have not provided them with evidence demonstrating a physical loss or damage to the insured premises. Def.'s Ans. [Dkt. No. 3], ¶ 8. Defendant also alleges none of Plaintiffs' claims fall within the policy's coverage language. *Id.* ¶ 9. Even if Plaintiffs' claims did qualify for coverage, Defendant argues coverage would be excluded by the Virus Exclusion, Consequential Loss Exclusion, and Acts or Decisions Exclusion. *Id.* Plaintiffs' Answer denies these allegations. Pls.'/Countercl. Defs.' Ans. [Dkt. No. 9 at 2].

Defendant argues that Plaintiffs never claimed or pleaded coverage under the Food Contamination provision as required by the policy. Def.'s Mem. Auths. [Dkt. No. 28 at 7 n.1]. Defendant notes Plaintiffs' Amended Complaint does not allege food contamination, which is required to trigger coverage under the policy's Food Contamination provision. *Id.* As such, Defendant asserts denial was proper because Plaintiffs failed to submit a claim or plead the applicability of this provision. *Id.* Plaintiffs do not address this provision in their response to Defendant's Motion for Judgment on the Pleadings.

It is unclear whether Plaintiffs ever actually submitted a claim for coverage under the Food Contamination provision of the policy; however, the policy clearly requires a governmental authority or a board of health to close the insured property as a result of the discovery or suspicion of contaminated food. Defendant has alleged facts that are sufficient to demonstrate Plaintiffs were ineligible for coverage under the Food Contamination provision. Plaintiffs have not pleaded food contamination. Because Defendant has alleged facts that are sufficient to demonstrate Plaintiffs were not entitled to coverage under this provision and Plaintiffs have failed to allege facts to the contrary, Defendant is entitled to the declaratory relief sought as to this provision. Regardless, the Virus Exclusion would preclude coverage for the reasons set forth above.

### 3. Spoilage Coverage

Defendant's Answer to Plaintiffs' Complaint raises the inapplicability of the Spoilage provision as an affirmative defense and seeks a declaratory judgment affirming its denial of coverage on this policy provision. Again, Defendant contends Plaintiffs have not provided them with evidence demonstrating a physical loss or damage to the insured premises. Def.'s Ans. [Dkt. No. 3], ¶ 8. Defendant also alleges none of Plaintiffs' claims fall within the policy's coverage language. *Id.* ¶ 9. Even if Plaintiffs' claims did qualify for coverage, Defendant argues coverage would be excluded by the Virus Exclusion, Consequential Loss Exclusion, and Acts or Decisions Exclusion. *Id.* Plaintiffs' Answer denies these allegations. Pls.'/Countercl. Defs.' Ans. [Dkt. No. 9 at 2]. Defendant argues that direct physical loss to perishable stock is required to trigger coverage under the Spoilage provision, and Plaintiffs have failed to plead physical loss of perishable stock. Def.'s Mem. Auths. [Dkt. No. 28 at 8]. Plaintiffs do not address this provision in their response to Defendant's Motion for Judgment on the Pleadings.

Again, it is unclear if Plaintiffs ever actually submitted a claim for coverage under the Spoilage provision of the policy; however, the policy unambiguously requires direct physical loss or damage to perishable stock that is caused by a Covered Cause of Loss. Defendant has alleged facts that are sufficient to demonstrate Plaintiffs were ineligible for coverage under the Spoilage provision. Plaintiffs have not alleged a physical loss or damage to perishable stock. Because Defendant has alleged facts that are sufficient to demonstrate Plaintiffs were not entitled to coverage under this provision and Plaintiffs have failed to allege facts to the contrary, Defendant is entitled to the declaratory relief sought as to this provision. Regardless, the Virus Exclusion would preclude coverage for the reasons set forth above.

####    4.   Consequential Losses Exclusion

Defendant's Answer to Plaintiffs' Complaint raises the Consequential Losses Exclusion contained in the policy as an affirmative defense. Def.'s Ans. [Dkt. No. 3 at 17]. Defendant alleges Plaintiffs' claims for coverage are excluded by the Consequential Losses provision of the policy. *Id.* ¶ 9. Defendant argues Plaintiffs have merely pleaded a loss of use, loss of market, or loss of access, which is an unsound argument because access to their facilities was not prohibited. Def.'s Mem. Auths. [Dkt. No. 28 at 23]. Defendant contends the policy defines Plaintiffs' alleged losses as consequential damages, which are excluded from coverage under the Consequential Losses Exclusion. *Id.* Defendant alleges the policy's definition of "consequential damages" is consistent with Iowa law. *Id.*

Plaintiffs argue the Consequential Losses Exclusion is inapplicable. They contend the Exclusion does not apply to a "loss of business income resulting from the necessary suspension of Plaintiffs' operations due to a Covered Loss." Pls.' Resis. Def.'s Mot. Dismiss [Dkt. No. 31 at 26]. Plaintiffs contend that Defendant is required to pay the actual loss of their business income if they can establish the suspension of their operations was necessary as a result of a covered loss. *Id.* They claim they have demonstrated they are entitled to coverage under the Business Income and Civil Authority provisions and permitting the Consequential Losses provision to offset this coverage would render the policy worthless. *Id.*

The Consequential Losses provision unambiguously states that Defendant will not pay for loss or damage resulting from a loss of use. The Court finds Defendant has alleged facts that are sufficient to demonstrate the applicability of the Consequential Losses exclusion. Plaintiffs have failed to allege facts that would prevent the application of this exclusion. Because Defendant has alleged facts that are sufficient to demonstrate the applicability of this exclusion and Plaintiffs have failed to allege facts to the contrary, Defendant is entitled to the declaratory relief sought as to this provision. Regardless, the Virus Exclusion would preclude coverage for the reasons set forth above.

####    5.   Acts or Decisions Exclusion

In Defendant's Answer to Plaintiffs' Complaint, Defendant argues the Acts of Decisions Exclusion precludes coverage. Def.'s Ans. [Dkt. No. 3 at 17]. Defendant argues Plaintiffs' Amended Complaint alleges the proclamation caused their losses, and any loss therefore was the result of the decision of a governmental actor. Def.'s Mem. Auths. [Dkt. No. 28 at 24]. Because

Governor Reynolds is a governmental body as an officer of the state of Iowa, Defendant argues the facts pleaded by the Plaintiffs demonstrate this exclusion applies. *Id.*

Plaintiffs respond by contending the Acts or Decisions Exclusion is inapplicable. They contend the exclusion states "it will pay for the loss or damage if an act or decision of a governmental body results in a Covered Cause of Loss." Pls.' Resis. Def.'s Mot. Dismiss [Dkt. No. 31 at 28]. Plaintiffs argue they have alleged a Covered Cause of Loss based on the Civil Authority provision because the proclamation prohibited access to their insured properties. *Id.* They contend the Acts or Decisions Exclusion cannot apply here because it would be nonsensical for it to apply to exclude coverage under the Civil Authority Provision. *Id.*

The Acts or Decisions provision unambiguously states Defendant will not pay for any loss or damage caused by or resulting from the acts or decisions of a governmental body. The Court finds Defendant has alleged facts that are sufficient to demonstrate the applicability of the Acts or Decisions exclusion. Plaintiffs have failed to allege facts that would prevent the application of this exclusion. Because Defendant has alleged facts that are sufficient to demonstrate the applicability of this exclusion and Plaintiffs have failed to allege facts to the contrary, Defendant is entitled to the declaratory relief sought as to this provision. Regardless, the Virus Exclusion would preclude coverage for the reasons set forth above.

### III.   Conclusion

For the reasons stated above and after consideration of all of the parties' arguments, the Court concludes that Defendant is entitled to judgment on the pleadings as to all Counts included in Plaintiff's Amended Complaint. Defendant is also entitled to judgment on the pleadings as to its counterclaim.

Upon the foregoing,

**IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings [Dkt. No. 26] is granted. The Clerk shall enter judgment as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Governor Kim Reynolds's March 17, 2020 proclamation restricting in-person dining at bars and restaurants did not cause "direct physical loss of or damage" to Plaintiffs' insured properties within the meaning of the insurance policy issued to Plaintiffs by Defendant Illinois Casualty Company. Defendant is not required to pay for Plaintiffs' alleged losses because Plaintiffs' claims do not fall within the policy's coverage or are otherwise excluded.

28

**DATED** this 30th day of November, 2020.

JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA